IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

MICHAEL HOOKER,                )
                               )
     Plaintiff,                )
                               )
v.                             )    No. 11-cv-2252-JTF-tmp
                               )
MAL HOOKER, et al.,            )
                               )
     Defendants.               )

_____

REPORT AND RECOMMENDATION
_____

Before the court by order of reference is *pro se* defendant Mal Hooker's Motion to Dismiss filed December 5, 2013. (ECF No. 55.) Plaintiff Michael Hooker ("Plaintiff"), also proceeding *pro se*, filed a response on February 10, 2014. (ECF No. 65.) For the reasons below, it is recommended that defendant's motion be granted in part and denied in part.

I.  PROPOSED FINDINGS OF FACT

A.  Background

The Complaint alleges that, on June 28, 2007, and July 9, 2007, Plaintiff purchased two pre-need funeral contracts in the amount of $36,083 and $16,000 from Defendant Funeral Directors Life Insurance Company ("FDLIC") to pay for the funeral of Plaintiff's

mother, Ella Mae Hooker ("Decedent").[1]  The contracts designated E.H. Ford Mortuary as provider of funeral services.  (Compl. ¶¶ 12-15.)  FDLIC allegedly failed to disclose that it would charge an "insurance handling fee" upon payment of the funds.  (Id. ¶ 16.)

The Decedent died on October 11, 2009.  At the time, Plaintiff was incarcerated in Texas and his wife, Reva Hooker, was a duly authorized attorney-in-fact under the terms and conditions of a valid Durable Power of Attorney.  (Id. ¶ 17.)  On October 12, 2009, Mal Hooker, Plaintiff's brother, had the Decedent's body transferred to his place of employment, Defendant Harrison's Funeral Home ("Harrison's").  (Id. ¶ 18.)  That day, Mal Hooker telephoned Reva Hooker to inquire about insurance policies on the Decedent, and Reva Hooker disclosed the two policies issued by FDLIC.  (Id. ¶ 19.)  On October 13, 2009, Reva Hooker met with Defendants Mal Hooker and Adriana Harrison at Harrison's.  Adriana Harrison asked Reva Hooker to agree to assign a $6,800 bill for funeral services to Harrison's, and Reva Hooker refused because the policies designated E.H. Ford Mortuary as the provider.  (Id. ¶ 20.)

On October 13, 2009, Mal Hooker telephoned Reva Hooker and, upon his representation that he was checking the validity of the policies, Reva Hooker provided Mal Hooker with Plaintiff's social

---

[1]The Background section of this report and recommendation is taken from a previous order granting partial dismissal of Plaintiff's claims against FDLIC.  (ECF No. 33.)

security number, date of birth, and all information pertaining to the policies. (Id. ¶ 21.) Mal Hooker allegedly telephoned FDLIC and, posing as Plaintiff, obtained information about the insurance contracts, which he subsequently provided to Adriana Harrison. (Id. ¶ 22.)

Plaintiff avers that Defendants Adriana Harrison, Mal Hooker, Michael D. Perie, and Claudette Eldridge (all of whom are employees of Harrison's) prepared an inflated and fraudulent death claim quote and signed an irrevocable assignment of the FDLIC policies to Mal Hooker and Adriana Harrison. (Id. ¶¶ 23-26.) FDLIC contacted Reva Hooker to confirm the validity of the irrevocable assignment and, upon learning that Plaintiff had not made an assignment, refused to honor the assignment. (Id. ¶¶ 27-28.)

Over Plaintiff's objection, Harrison's provided funeral services for the burial of the Decedent. (Id. ¶ 30.) After the Decedent was buried, Plaintiff contacted FDLIC and requested that E.H. Ford Mortuary conduct a memorial and late funeral service for the Decedent and that funding for those services be provided through the pre-need policies. (Id. ¶ 31.) FDLIC refused to honor Plaintiff's request on the ground that Harrison's had to be paid for the services rendered. (Id. ¶ 32.)

At some unspecified time, Mal Hooker visited the E.H. Ford Mortuary, where he allegedly made unspecified threats in an attempt to obtain payment for the Decedent's funeral. (Id. ¶ 34.) Mal

Hooker and Adriana Harrison also made unspecified threats to ruin Plaintiff's credit and to deprive Plaintiff of any permanent control over the outstanding balance of the policies. They also "threatened libel and slander." (Id. ¶ 35.)

On December 23, 2009, FDLIC advised Plaintiff that it had made a payment of $12,872.76 to Harrison's and that it had issued a check in the amount of $25,618.88, representing excess funds, to Plaintiff. (Id. ¶¶ 36-38.) On December 11, 2009, Plaintiff filed a complaint with the Tennessee Department of Commerce and Insurance. (Id. ¶ 39.) In his response, Defendant Perie used the phrases "a preneed disaster," "feud between the family," and "constant harassment by family members." (Id. ¶ 40.)

The Complaint asserts the following claims against Defendant Mal Hooker: a claim under 18 U.S.C. § 241 (id. ¶ 44); a claim for wire fraud, in violation of 18 U.S.C. § 1343 (id. ¶ 45); a claim under 18 U.S.C. §§ 1951, 1952, 1961, and 1962 (id. ¶ 46); a claim for aiding and abetting, in violation of 18 U.S.C. § 2 (id. ¶ 47); a claim under the Tennessee Consumer Protection Act ("TCPA") and unspecified federal law (id. ¶ 48); and a fraud claim (id. at pp. 14, 15). Plaintiff seeks declaratory relief and compensatory and punitive damages. (Id.)

**B. Motion to Dismiss**

Mal Hooker has now moved the court to dismiss him as a defendant in this case. Mal Hooker's motion states: "The letters

(copy attached) from Funeral Directors Life Insurance Company to the Plaintiff Michael Hooker and Harrison Funeral Home settling the insurance claim did not include the Defendant, Mal Hooker. The disbursement check (copy attached) to the Plaintiff, Michael Hooker was for full and final settlement of the claim. The Plaintiff accepted the check and directed Funeral Directors Life Insurance Company to deposit into his Suntrust Bank account. Documentation is attached to this pleading to justify dismissal of the Defendant, Mal Hooker as a Defendant." Attached to the motion are a letter from FDLIC to Plaintiff confirming that FDLIC had tendered to Plaintiff the "final payment of the excess funds due [] under the Preneed Contract"; a copy of the check from FDLIC to Plaintiff; and a letter from FDLIC to Harrison's confirming that FDLIC had sent to Harrison's the proceeds from Plaintiff's insurance contract.

In response, Plaintiff reasserts the allegations contained in his complaint and attaches several documents, including correspondence between FDLIC and Plaintiff regarding the funeral services provided for Decedent; a copy of a letter to Mal Hooker from the Tennessee Department of Commerce and Insurance; a portion of a letter to the Tennessee Department of Commerce, but with the signature portion of the letter missing; a letter from FDLIC to Plaintiff explaining that it had deposited the excess funds from the pre-need contract into Plaintiff's bank account; and a copy of

an "irrevocable assignment to select funeral funding" signed by Mal Hooker, Adriana Harrison, and Claudette Eldridge.

## II. PROPOSED CONCLUSIONS OF LAW

### A. Standard of Review

Under Rule 8(a) of the Federal Rules of Civil Procedure, a complaint must contain a short and plain statement showing that the pleader is entitled to relief. Federal Rule of Civil Procedure 12(b)(6) provides that a complaint may be dismissed for failure to state a claim upon which relief may be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Merely pleading facts that are consistent with a defendant's liability or that permit the court to infer misconduct is insufficient to constitute a plausible claim." HDC, LLC v. City of Ann Arbor, 675 F.3d 608, 611 (6th Cir. 2012) (citing Iqbal, 556 U.S. at 678).

In considering a motion to dismiss under Rule 12(b)(6), the court views the complaint in the light most favorable to the plaintiff, accepts the allegations as true, and draws all reasonable inferences in favor of the plaintiff. KSR Int'l Co. v. Delphi Auto. Sys., No. 12-2063, 2013 WL 1749336, at *1 (6th Cir. Apr. 23, 2013) (citing Bassett v. Nat'l Collegiate Athletic Ass'n,

528 F.3d 426, 430 (6th Cir. 2008)). "A legal conclusion couched as a factual allegation need not be accepted as true on a motion to dismiss, nor are recitations of the elements of a cause of action sufficient." Handy-Clay v. City of Memphis, No. 10-2927-STA-tmp, 2013 WL 2948442, at *4 (W.D. Tenn. June 14, 2013) (quoting Hensley Mfg. v. ProPride, Inc., 579 F. 3d 603, 609 (6th Cir. 2009)) (internal quotation marks omitted); see also Infection Prevention Techs. v. UVAS, LLC, No. 10-cv-12371, 2011 WL 4360007, at *24 (E.D. Mich. July 25, 2011), report and recommendation adopted, No. 10-12371, 2011 WL 4360091 (E.D. Mich. Sept. 19, 2011) ("[Plaintiff] asserts that Defendants' 'actions were in bad faith, willful, wanton.' But these statements are pure legal conclusions insufficient to state a claim upon which relief may be granted.") (internal citations omitted). When deciding a motion to dismiss, a court "may consider exhibits attached to the complaint, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims therein, without converting the motion to one for summary judgment." Rondigo, L.L.C., v. Twp. of Richmond, 641 F.3d 673, 680-81 (6th Cir. 2011) (quoting Bassett, 528 F.3d at 430).

Documents filed *pro se* are to be liberally construed. Erickson v. Pardus, 551 U.S. 89, 94 (2007); Spriggs v. Shanlian, No. 12-14918, 2014 WL 1304910, at *5 (E.D. Mich. Mar. 29, 2014)

("Of course, *pro se* pleadings are to be liberally construed."); Carter v. Skahan, No. 13-2674-JDT-CGC, 2014 WL 1269752, at *2 (W.D. Tenn. Mar. 27, 2014) ("Pleadings and documents filed by *pro se* litigants are to be 'liberally construed' . . . ."). *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. Wells v. Brown, 891 F.2d 591, 594 (6th Cir. 1989); Lewis v. Detroit Pub. Sch., No. 12-11851, 2013 WL 5785777, at *2 (E.D. Mich. May 6, 2013) (requiring a *pro se* plaintiff to adhere to the Federal Rules of Civil Procedure). Here, the court takes into account the *pro se* status of both Plaintiff and Mal Hooker. Although the motion to dismiss does not cite Rule 12(b)(6) or include legal arguments as to each claim against Mal Hooker, the court construes the motion as being brought under Rule 12(b)(6) to dismiss all claims against Mal Hooker.

**B.    Claim Under 18 U.S.C. § 241**

18 U.S.C. § 241 provides the following:

If two or more persons conspire to injure, oppress, threaten, or intimidate any person in any State, Territory, Commonwealth, Possession, or District in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same; or
If two or more persons go in disguise on the highway, or on the premises of another, with intent to prevent or hinder his free exercise or enjoyment of any right or privilege so secured--
They shall be fined under this title or imprisoned not more than ten years, or both; and if death results from the acts committed in violation of this section or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse or an attempt to commit

aggravated sexual abuse, or an attempt to kill, they shall be fined under this title or imprisoned for any term of years or for life, or both, or may be sentenced to death.

18 U.S.C. § 241. This statute is a criminal statute with no private right of action. See Booth v. Henson, 290 F. App'x 919, 920-21 (6th Cir. 2008); United States v. Oquaju, 76 F. App'x 579, 581 (6th Cir. 2003); Moore v. Potter, 47 F. App'x 318, 320 (6th Cir. 2002); Brewster v. Wells Fargo Bank, No. 11-1232-JDB-egb, 2012 WL 4024749, at *4 n.8 (W.D. Tenn. Sept. 12, 2012); Riser v. WSYX-TV ABC-6, No. C2-02-091, 2002 WL 31409427, at *8 (S.D. Ohio July 17, 2002) (citing Krajicek v. Justin, No. 98-1249, 1999 WL 195734, at *1 (6th Cir. Mar. 23, 1999)) (concluding that § 241 does not provide any basis for civil liability). The district court has already dismissed the § 241 claim against FDLIC because this statute fails to provide a private right of action. (ECF No. 33 at 10.) Similarly, the court recommends that the § 241 claim against Mal Hooker be dismissed.

**C.   Claim Under 18 U.S.C. § 1343**

18 U.S.C. § 1343 provides the following:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both. If the violation occurs in relation to, or involving any benefit authorized, transported,

>transmitted, transferred, disbursed, or paid in connection with, a presidentially declared major disaster or emergency (as those terms are defined in section 102 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act (42 U.S.C. 5122)), or affects a financial institution, such person shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

18 U.S.C. § 1343. No private right of action exists under this wire fraud statute. Sara v. Brown, 11 F. App'x 387, 388 (6th Cir. 2001); Morganroth & Morganroth v. DeLorean, 123 F.3d 374, 386 (6th Cir. 1997) (concluding that violations of the federal wire fraud criminal statute "do not give rise to independent, private causes of action). The district court has already dismissed the § 1343 claim against FDLIC because no private right of action exists under this statute. (ECF No. 33 at 10.) The court recommends that Plaintiff's claim under § 1343 against Mal Hooker be dismissed.

**D.   Claim Under 18 U.S.C. §§ 1951, 1952, 1961, and 1962**

The complaint refers to 18 U.S.C. §§ 1951, 1952, 1961, and 1962, *et seq*. The court assumes that Plaintiff is proceeding under Section 1964(c), the Racketeering Influenced and Corrupt Organizations Act ("RICO") provision authorizing civil suits for a violation of 18 U.S.C. § 1962. It provides in pertinent part that:

>Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefore in any appropriate United States district court . . . .

18 U.S.C. § 1964(c). To establish a violation of Section 1962,[2] a plaintiff must show: "(1) that there were two or more predicate offenses; (2) that an 'enterprise' existed; (3) that there was a nexus between the pattern of racketeering activity and the enterprise; and (4) that an injury to business or property occurred as a result of the above three factors." VanDenBroeck v. CommonPoint Mortg. Co., 2010 F.3d 696, 699 (6th Cir. 2001). RICO defines racketeering activity to include any act that is indictable under certain provisions of Title 18 of the United States Code, including wire fraud, 18 U.S.C. § 1343, and mail fraud, 18 U.S.C. § 1341. The Sixth Circuit recently explained what a plaintiff must show to demonstrate a sufficient pattern of racketeering activity:

> To establish a substantive RICO violation, a plaintiff must show "a pattern of racketeering activity." 18 U.S.C. § 1962(c). A pattern of racketeering activity requires, at minimum, two acts of racketeering activity within ten years of each other. 18 U.S.C. § 1961(5). While the statute defines the minimum number of acts necessary to establish a pattern of racketeering activity, the Supreme Court has held that the minimum two acts are not necessarily sufficient. In order to show a "pattern" of racketeering activity, a plaintiff must show "that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229,

---

[2] 18 U.S.C. § 1962(c) provides:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

237–39, 109 S. Ct. 2893, 106 L. Ed. 2d 195 (1989). This requirement has come to be called the "relationship plus continuity" test. See, e.g., Brown v. Cassens Transp. Co., 546 F.3d 347, 355 (6th Cir. 2008).

. . .

The continuity prong of the test can be satisfied by showing either a "close-ended" pattern (a series of related predicate acts extending over a substantial period of time) or an "open-ended" pattern (a set of predicate acts that poses a threat of continuing criminal conduct extending beyond the period in which the predicate acts were performed). Id. at 241–42, 109 S.Ct. 2893. The plaintiffs cannot establish close-ended continuity. "A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months . . . do not satisfy this [close-ended continuity] requirement . . . ." Id. at 242, 109 S. Ct. 2893 (omitted text addresses the threat of future criminal conduct, which is part of an open-ended continuity analysis). This court has found that racketeering activity that spanned seventeen months did not constitute a substantial period of time. See Vemco, Inc. v. Camardella, 23 F.3d 129, 134 (6th Cir. 1994) (finding that allegations of four predicate acts, affecting one victim and spanning seventeen months, were insufficient to meet the continuity requirement). In this case, the predicate acts of racketeering activity spanned less than two months — January and February 2006 — and thus do not meet the requirements for close-ended continuity.

. . .

Often a RICO action will be brought before continuity can be established [by showing predicate acts spanning a substantial period of time]. In such cases, liability depends on whether the *threat* of continuity is demonstrated." H.J. Inc., 492 U.S. at 242, 109 S. Ct. 2893. So the plaintiffs must plausibly allege that there was a threat of continuing criminal activity beyond the period during which the predicate acts were performed. Determining whether the predicate acts establish open-ended continuity requires a court to examine the specific facts of the case. Id. The threat of continuing racketeering activity need not be established, however, exclusively by reference to the predicate acts alone; rather, a court should consider the totality of the

circumstances surrounding the commission of those acts. Brown, 546 F.3d at 355.

Heinrich v. Waiting Angels Adoption Servs., Inc., 668 F.3d 393, 409-10 (6th Cir. 2012). Even assuming, *arguendo*, that Plaintiff has sufficiently pleaded the commission of two or more predicate offenses, the allegations in the complaint do not state a plausible claim under RICO because the allegations do not sufficiently demonstrate "close-ended" continuity, as all of the acts occurred within a span of a few days. Nor do the allegations sufficiently demonstrate "open-ended" continuity, as there are no allegations that would suggest a threat of continuing criminal activity beyond the period during which the acts were performed. Therefore, it is recommended that Plaintiff's RICO claim against Mal Hooker be dismissed.

**E.     Claim Under 18 U.S.C. § 2**

18 U.S.C. § 2 provides the following:

(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

18 U.S.C. § 2. As the district court noted in its order granting FDLIC partial dismissal, there is no private right of action under this statute. ECF No. 33 at 11; Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A., 511 U.S. 164, 190-91 (1994);

Anderson v. Ballou, Civil No. 12-70-GFVT, 2012 WL 3027679 (E.D. Ky. July 24, 2012) ("18 U.S.C. § 2 does not define a crime; rather it makes punishable as a principal one who aids or abets the commission of a substantive crime.  Being there is no substantive offense, there can be no aiding and abetting.").  For the same reason, the court recommends that Plaintiff's aiding and abetting claim against Mal Hooker be dismissed.

**F.   Claim Under the Tennessee Consumer Protection Act**

Under Tennessee law, "[i]n order to recover under the TCPA, the plaintiff must prove: (1) that the defendant engaged in an unfair or deceptive act or practice declared unlawful by the TCPA and (2) that the defendant's conduct caused an 'ascertainable loss of money or property, real, personal, or mixed, or any other article, commodity, or thing of value wherever situated...." Berkley v. Deutsche Bank Nat. Trust Co., 2:12-CV-02642-JTF, 2013 WL 6834385 (W.D. Tenn. Dec. 20, 2013) (quoting Tucker v. Sierra Builders, 180 S.W.3d 109, 115 (Tenn. Ct. App. 2005) (quoting Tenn. Code Ann. § 47–18–109(a)(3))).  "A deceptive act or practice is one that causes or tends to cause a consumer to believe what is false or that misleads or tends to mislead a consumer as to a matter of fact." Case Handyman Serv. of Tenn., LLC v. Lee, No. M2011-00751-COA-R3CV, 2012 WL 2150857, at *9 (Tenn. Ct. App. June 13, 2012) (quoting Poole v. Union Planters Bank, N.A., 337 S.W.3d 771, 786 (Tenn. Ct. App. 2010) (internal quotation marks omitted).  "The

-14-

TCPA is applicable only to a transaction between a person engaged in business and a member of the consuming public, that is, the defendant in a TCPA claim must be 'in the business of advertising, offering for sale, lease, or rental, or distributing goods, services, or property.'" Hanson v. J.C. Hobbs Co., Inc., No. W2011-02523-COA-R3CV, 2012 WL 5873582, at *10 (Tenn. Ct. App. Nov. 21, 2012) (quoting White v. Eastland, No. 01–A–019009CV00329, 1991 WL 149735, at *3 (Tenn. Ct. App. Aug. 9, 1991)); see also Campbell v. Teague, No. W2009-00529-COA-R3-CV, 2010 WL 1240732, at *5 (Tenn. Ct. App. Mar. 31, 2010) (citing White, 1991 WL 149735, at *3).

Here, the facts as alleged by Plaintiff do not show that Mal Hooker ever engaged in any transaction with "a member of the consuming public" in an attempt "to cause a consumer to believe what is false" or "to mislead a consumer," as is required to state a claim under the TCPA. At most, Plaintiff alleges that Mal Hooker engaged in a fraudulent scheme to gain the insurance proceeds of Plaintiff's contract for himself and his employer. However, that allegation, even taken as true for the purposes of this motion, does not state a claim under the TCPA because none of the alleged fraud occurred in "a transaction between a person engaged in business and a member of the consuming public," nor "misled a consumer." As such, the court recommends that Plaintiff's TCPA claim against Mal Hooker be dismissed.

**G.    Fraud Claim**[3]

"Common-law fraud in Tennessee contains the following elements: (1) 'a party intentionally misrepresents a material fact or produces a false impression in order to mislead another or obtain an undue advantage,' (2) knowledge of falsity, (3) fraudulent intent, (4) an existing, material fact, and (5) reasonable reliance." <u>Finley v. Kondaur Capital Corp.</u>, 909 F. Supp. 2d 969, 977 (W.D. Tenn. 2012) (quoting <u>First Nat'l Bank of Louisville v. Brooks Farms</u>, 821 S.W.2d 925, 927 (Tenn. 1991)). A complaint alleging fraud must state with particularity the acts constituting fraud to meet a heightened pleading standard under Federal Rule of Civil Procedure 9(b).  Under Rule 9(b), "'allegations of fraudulent misrepresentation[s] must be made with sufficient particularity and with a sufficient factual basis to

---

[3]The district court's order granting partial dismissal of the claims against FDLIC summarized the complaint and made no mention of a common law fraud claim against Mal Hooker.  It is unclear whether the district court's previous order, which addressed only FDLIC's motion to dismiss, was meant to limit the claims against defendant Mal Hooker.  Liberally construing the complaint in favor of the *pro se* plaintiff, the court believes that the complaint contains a common law fraud claim against Mal Hooker.  See <u>Buckingham v. Ally Fin.</u>, No. 12-2985, 2013 WL 3864820, at *4 (W.D. Tenn. July 24, 2013) (quoting <u>Williams v. Curtin</u>, 631 F.3d 380, 383 (6th Cir. 2011)) ("*Pro se* complaints are to be held to less stringent standards than formal pleadings drafted by lawyers, and should therefore be liberally construed.").  On the first page of the complaint, Plaintiff states that he is alleging "fraud," and on pages 14 and 15, makes reference to "fraud" and "misrepresentation" by Mal Hooker.  (ECF No. 1 at 1, 14-15.)

support an inference that they were knowingly made.'" <u>Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n</u>, 176 F.3d 315, 322 (6th Cir. 1999) (quoting <u>Coffey v. Foamex L.P.</u>, 2 F.3d 157, 162 (6th Cir. 1993)). "A complaint is sufficient under Rule 9(b) if it alleges the time, place, and content of the alleged misrepresentation on which [the deceived party] relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud, and enables defendants to prepare an informed pleading responsive to the specific allegations of fraud." <u>United States ex rel. Poteet v. Medtronic, Inc.</u>, 52 F.3d 503, 518 (6th Cir. 2009) (internal quotation marks omitted).

Here, the court concludes that Plaintiff has sufficiently alleged a fraud claim against Mal Hooker to survive a motion to dismiss. According to the complaint, "Mal Hooker did make an Interstate telephone call to 'FDLIC' offices, in the State of Texas. During this phone call, Defendant Mal Hooker did misrepresent his identity, by posing as Plaintiff, Michael Hooker, with intent of receiving personal information in concern with the related Preneed Contract(s)." (ECF No. 1 ¶ 22.) Plaintiff also alleges in his complaint that Mal Hooker falsely represented that he was a beneficiary of the policy and "signed and submitted the Irrevocable Assignment as 'Responsible Party', unbeknownst to Plaintiff." (ECF No. 1 ¶ 26.) As a result of these alleged actions, Mal Hooker and other co-defendants purportedly gained the

funds from these pre-need contracts. These allegations of fraud are sufficient to survive Mal Hooker's motion to dismiss.

### III. RECOMMENDATION

For the above reasons, it is recommended that Mal Hooker's motion be granted in part and denied in part, and that all claims against Mal Hooker except the fraud claim be dismissed.

Respectfully submitted,

s/ Tu M. Pham
TU M. PHAM
United States Magistrate Judge

April 8, 2014
Date

**NOTICE**

**WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THIS REPORT AND RECOMMENDED DISPOSITION, ANY PARTY MAY SERVE AND FILE SPECIFIC WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS. ANY PARTY MAY RESPOND TO ANOTHER PARTY'S OBJECTIONS WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b)(2); L.R. 72.1(g)(2). FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND FURTHER APPEAL.**