IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

MICHAEL HOOKER,                )
                               )
    Plaintiff,              )
                               )
v.                             )    No. 11-cv-2252-JTF-tmp
                               )
MAL HOOKER, et al.,            )
                               )
    Defendants.             )
                               )
_____

# REPORT AND RECOMMENDATION
_____

Before the court is the motion to dismiss filed by defendant Adriana Harrison ("Ms. Harrison") on July 23, 2014. (ECF No. 90.) Defendant Harrison's Funeral Home joined in Ms. Harrison's motion on September 23, 2014. (ECF No. 101.) Defendant Mal Hooker filed a motion to join the motion to dismiss on September 25, 2014.[1] (ECF No. 102.) Plaintiff Michael Hooker filed a response in opposition on September 29, 2014. (ECF No. 103.) For the reasons below, it is recommended that Ms. Harrison and Harrison's Funeral Home's motion be

---

[1] The only claim remaining against Mal Hooker is a common law fraud claim. (ECF No. 81.) Therefore, as to Mal Hooker, the court need only consider whether the complaint states a claim for fraud against him.

granted in part and denied in part, and that Mal Hooker's motion be denied.[2]

## I. PROPOSED FINDINGS OF FACT

**A. Background[3]**

Plaintiff's complaint alleges that on June 28, 2007, and July 9, 2007, Plaintiff purchased two pre-need funeral contracts in the amount of $36,083 and $16,000 from FDLIC to pay for the funeral of Plaintiff's mother, Ella Mae Hooker. The contracts identified E.H. Ford Mortuary as the designated provider of funeral services and merchandise. (Compl. ¶¶ 12-15.) FDLIC allegedly failed to disclose that it would charge an "insurance handling fee" upon payment of the funds. (Compl. ¶ 16.) Plaintiff's mother died on October 11, 2009. At the time, Plaintiff was incarcerated in Texas and his wife, Reva Hooker, was his duly authorized attorney-in-fact pursuant to a durable power of attorney. (Compl. ¶ 17.) On October 12, 2009, Mal Hooker, Plaintiff's brother, had Ella Mae Hooker's body transferred to his place of employment, Harrison's Funeral Home. (Compl. ¶ 18.) That day, Mal Hooker telephoned Reva Hooker to

---

[2]The court also recommends, *sua sponte*, dismissing all claims against defendants Michael Perie and Claudette Eldridge.

[3]These background facts are taken from the court's March 18, 2013 Order granting in part and denying in part a prior motion to dismiss filed by defendant Funeral Directors Life Insurance Co. ("FDLIC"). (ECF No. 33.)

inquire about insurance policies on the decedent. Reva Hooker disclosed the two policies issued by FDLIC. (Compl. ¶ 19.)

On October 13, 2009, Reva Hooker met with defendants Mal Hooker and Ms. Harrison at Harrison's Funeral Home. Ms. Harrison asked Reva Hooker to agree to assign a $6,800 bill for funeral services to Harrison's Funeral Home. Reva Hooker refused because the policies designated E.H. Ford Mortuary as the provider of funeral services. (Compl. ¶ 20.) Later that day, Mal Hooker telephoned Reva Hooker and, based upon his representation that he was simply checking the validity of the policies, she provided Mal Hooker with Plaintiff's social security number, date of birth, and all information pertaining to the policies. (Compl. ¶ 21.) Mal Hooker allegedly telephoned FDLIC and, posing as Plaintiff, obtained information about the insurance contracts, which he subsequently provided to Ms. Harrison. (Compl. ¶ 22.)

Plaintiff avers that Ms. Harrison, Mal Hooker, and Harrison's Funeral Home employees Michael Perie and Claudette Eldridge prepared an inflated and fraudulent death claim quote and forged Plaintiff's signature on an irrevocable assignment of the FDLIC policies to Mal Hooker and Ms. Harrison. (Compl. ¶ 23-26.) FDLIC contacted Reva Hooker to confirm the validity of the irrevocable assignment and, upon learning that Plaintiff had not made an assignment, refused to honor the assignment.

(Compl. ¶ 27-28.) Over Plaintiff's objection, Harrison's Funeral Home provided funeral services and merchandise for the burial of Plaintiff's mother. (Compl. ¶ 30.) After his mother was buried, Plaintiff contacted FDLIC and requested that E.H. Ford Mortuary conduct a memorial and late funeral service, and that funding for those services be provided through the pre-need policies. (Compl. ¶ 31.) FDLIC refused to honor Plaintiff's request on the ground that Harrison's Funeral Home had to be paid for the services rendered. (Compl. ¶ 32.)

At some unspecified time, Mal Hooker visited the E.H. Ford Mortuary, where he allegedly made unspecified threats in an attempt to obtain payment for his mother's funeral. (Compl. ¶ 34.) Mal Hooker and Ms. Harrison also made unspecified threats to ruin Plaintiff's credit and to deprive Plaintiff of any permanent control over the outstanding balance of the policies. They also "threatened libel and slander." (Compl. ¶ 35.)

On December 23, 2009, FDLIC advised Plaintiff that it had made a payment of $12,872.76 to Harrison's Funeral Home and that it had issued a check in the amount of $25,618.88, representing excess funds, to Plaintiff. (Compl. ¶ 36-38.) On December 11, 2009, Plaintiff filed a complaint with the Tennessee Department of Commerce and Insurance. (Compl. ¶ 39.) In his response, defendant Perie used the phrases "preneed disaster," "feud between the family," and "constant harassment by family

members," in describing the situation to the Tennessee Department of Commerce and Insurance. (Compl. ¶ 40.)

On September 15, 2010, Reva Hooker (on behalf of herself and Plaintiff) swore out a civil warrant in Shelby County General Sessions Court, naming Adrianna Harrison, Harrison's Funeral Home, Michael Perie, and Claudette Eldridge as defendants. (ECF No. 91-1, Shelby County General Sessions Civil Warrant 1448503.) The stated cause of action on the civil warrant was for "life insurance policy." (Id.) The civil warrant was subsequently dismissed by voluntary nonsuit on October 19, 2010. (Id.)

Plaintiff filed suit against FDLIC, Harrison's Funeral Home, Ms. Harrison, Harrison's Funeral Home employees Claudette Eldridge and Michael Perie, and Mal Hooker on April 1, 2011. (ECF No. 1.) The court has since dismissed all claims against FDLIC and all claims against Mal Hooker except a common law fraud claim. (ECF Nos. 81, 106.) Ms. Harrison and Harrison's Funeral Home now move to dismiss all claims against them. Mal Hooker, by joining the motion to dismiss, seeks dismissal of the remaining fraud claim against him.

## II.  PROPOSED CONCLUSIONS OF LAW

**A.  Standard of Review**

Under Rule 8(a) of the Federal Rules of Civil Procedure, a complaint must contain a short and plain statement showing that

the pleader is entitled to relief. Federal Rule of Civil Procedure 12(b)(6) provides that a complaint may be dismissed for failure to state a claim upon which relief may be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Merely pleading facts that are consistent with a defendant's liability or that permit the court to infer misconduct is insufficient to constitute a plausible claim." HDC, LLC v. City of Ann Arbor, 675 F.3d 608, 611 (6th Cir. 2012) (citing Iqbal, 556 U.S. at 678).

In considering a motion to dismiss under Rule 12(b)(6), the court views the complaint in the light most favorable to the plaintiff, accepts the allegations as true, and draws all reasonable inferences in favor of the plaintiff. KSR Int'l Co. v. Delphi Auto. Sys., No. 12-2063, 2013 WL 1749336, at *1 (6th Cir. Apr. 23, 2013) (citing Bassett v. Nat'l Collegiate Athletic Ass'n, 528 F.3d 426, 430 (6th Cir. 2008)). "A legal conclusion couched as a factual allegation need not be accepted as true on a motion to dismiss, nor are recitations of the elements of a cause of action sufficient." Handy-Clay v. City of Memphis, No. 10-2927-STA-tmp, 2013 WL 2948442, at *4 (W.D. Tenn. June 14, 2013) (quoting Hensley Mfg. v. ProPride, Inc., 579 F. 3d 603,

609 (6th Cir. 2009)) (internal quotation marks omitted); see also Infection Prevention Techs. v. UVAS, LLC, No. 10-cv-12371, 2011 WL 4360007, at *24 (E.D. Mich. July 25, 2011), report and recommendation adopted, No. 10-12371, 2011 WL 4360091 (E.D. Mich. Sept. 19, 2011) ("[Plaintiff] asserts that Defendants' 'actions were in bad faith, willful, wanton.' But these statements are pure legal conclusions insufficient to state a claim upon which relief may be granted.") (internal citations omitted).

"*Pro se* complaints are to be held to less stringent standards than formal pleadings drafted by lawyers, and should therefore be liberally construed." Williams v. Curtin, 631 F.3d 380, 383 (6th Cir. 2011) (internal quotation marks omitted). *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. Wells v. Brown, 891 F.2d 591, 594 (6th Cir. 1989); see also Brown v. Matauszak, 415 F. App'x 608, 613 (6th Cir. 2011) ("[A] court cannot create a claim which [a plaintiff] has not spelled out in his pleading") (internal quotation marks omitted); Payne v. Sec'y of Treas., 73 F. App'x 836, 837 (6th Cir. 2003) (affirming *sua sponte* dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her"); cf. Pliler v. Ford, 542 U.S. 225, 231 (2004) ("District judges have no obligation to

act as counsel or paralegal to *pro se* litigants."); Young Bok Song v. Gipson, 423 F. App'x 506, 510 (6th Cir. 2011) ("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants. Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party. While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue.").

**B. Claims Under 18 U.S.C. §§ 2, 241, 1343, 1951, 1952, 1961, and 1962**

The court has previously dismissed claims against defendants Mal Hooker and FDLIC under 18 U.S.C. §§ 2, 241, 1343, 1951, 1952, 1961, and 1962, for failure to state a claim. (ECF Nos. 81, 106.) Sections 2, 241, and 1343 are criminal statutes with no private right of action. See Anderson v. Ballou, Civil No. 12-70-GFVT, 2012 WL 3027679 (E.D. Ky. July 24, 2012) ("18 U.S.C. § 2 does not define a crime; rather it makes punishable as a principal one who aids or abets the commission of a substantive crime. Being there is no substantive offense, there can be no aiding and abetting."); Riser v. WSYX-TV ABC-6, No. C2-02-091, 2002 WL 31409427, at *8 (S.D. Ohio July 17, 2002) (citing Krajicek v. Justin, No. 98-1249, 1999 WL 195734, at *1

(6th Cir. Mar. 23, 1999)) (concluding that § 241 does not provide any basis for civil liability); Morganroth & Morganroth v. DeLorean, 123 F.3d 374, 386 (6th Cir. 1997) (concluding that violations of the federal wire fraud criminal statute do not give rise to independent, private causes of action). The court assumes that the complaint's referral to 18 U.S.C. §§ 1951, 1952, 1961, and 1962, indicates that Plaintiff is proceeding under § 1964(c), the Racketeering Influenced and Corrupt Organizations Act provision authorizing civil suits for a violation of 18 U.S.C. § 1962. The court previously found that Plaintiff has failed to demonstrate either "open-ended" or "close-ended" continuity as required to state a claim under such a cause of action. (ECF No. 76 at 10-13.) In his response in opposition to the present motion to dismiss, Plaintiff states that he is no longer pursuing these claims. (ECF No. 103 at 1.) Therefore, it is recommended that Plaintiff's claims for violations of 18 U.S.C. §§ 2, 241, 1343, 1951, 1952, 1961, and 1962 be dismissed.

**C. TCPA Claim**

"Where the plaintiff has alleged a violation of the TCPA, federal courts 'must apply the procedural law, including statutes of limitations of the forum state . . . .'" Harvey v. Allstate Ins. Co., No. 03-2721-MIV, 2004 WL 3142224, at *2 (W.D. Tenn. Aug. 23, 2004) (quoting Mackey v. Judy's Foods, Inc., 867

F. 2d 325, 328 (6th Cir. 1989)). The statute of limitations for actions brought under the TCPA is one year from a person's discovery of the unlawful act or practice. Tenn. Code Ann. § 47-18-110. This court has previously explained that "the running of the statute of limitations commenced no later than December 23, 2009, and that Plaintiff's complaint, which was filed on April 1, 2011, ordinarily would be untimely." (ECF No. 33 at 12.) This court has also previously concluded that the Tennessee saving's statute does not apply to render Plaintiff's TCPA claim against FDLIC timely. (ECF No. 106 at 4-5.) Tennessee's savings statute provides, in pertinent part:

> [i]f the action is commenced within the time limited by a rule or statute of limitation, but the judgment or decree is rendered against the plaintiff upon any ground not concluding the plaintiff's right of action, or where the judgment or decree is rendered in favor of the plaintiff, and is arrested, or reversed on appeal, the plaintiff, or the plaintiff's representatives and privies, as the case may be, may, from time to time, commence a new action within one (1) year after the reversal or arrest.

Tenn. Code Ann. § 28-1-105(a); see also Engler v. Karnes Legal Servs., No. W200602443COAR3CV, 2008 WL 2219279, at *3 (Tenn. Ct. App. May 29, 2008) (quoting Cronin v. Howe, 906 S.W.2d 910, 912 (Tenn. 1995)) ("The purpose of the Tennessee savings statute is to provide a diligent plaintiff an opportunity to renew a suit that is dismissed by any judgment or decree that does not conclude the plaintiff's right of action.").

The state court action filed by Reva Hooker on behalf of herself and Michael Hooker against Ms. Harrison and Harrison's Funeral Home cannot be reasonably construed as an action for a violation of the TCPA. The civil warrant in the state court action simply identified the cause of action as "life insurance policy."[4] Even under a generous interpretation, the state court defendants were at most put on notice of a potential breach of contract claim, not a TCPA claim. The savings statute is only effective as to a cause of action that is contained within the original timely filed complaint, and thus, it cannot save Plaintiff's current TCPA claim and render it timely. See Bowling v. Goff, No. E1998-00820-COA-R3-CV, 2000 WL 336664, at *1 (Tenn. Ct. App. Mar. 30, 2000) (finding that the savings statute was not implicated when the first complaint and the second complaint alleged different causes of action, stating, "The first complaint seems to allege malicious prosecution and/or false imprisonment; while the complaint in the instant action alleges what amounts to a 42 U.S.C.A. § 1983 violation. Therefore, the plaintiff cannot rely upon the first complaint to toll the statute of limitations as it pertains to an alleged

---

[4]A copy of the civil warrant is attached to Harrison's motion to dismiss. The court finds that the civil warrant does not require converting the motion to dismiss to one for summary judgment. Moreover, Plaintiff does not contest the authenticity of the civil warrant, nor does he claim that the court's consideration of the warrant should result in a conversion of the motion to one for summary judgment.

violation of his civil rights or other constitutional guarantees."). It is therefore recommended that Plaintiff's TCPA claim against Ms. Harrison and Harrison's Funeral Home be dismissed.

**D.  Common Law Fraud Claim**

"Common-law fraud in Tennessee contains the following elements: (1) 'a party intentionally misrepresents a material fact or produces a false impression in order to mislead another or obtain an undue advantage,' (2) knowledge of falsity, (3) fraudulent intent, (4) an existing, material fact, and (5) reasonable reliance." Finley v. Kondaur Capital Corp., 909 F. Supp. 2d 969, 977 (W.D. Tenn. 2012) (quoting First Nat'l Bank of Louisville v. Brooks Farms, 821 S.W.2d 925, 927 (Tenn. 1991)). Under Rule 9(b), "'allegations of fraudulent misrepresentation[s] must be made with sufficient particularity and with a sufficient factual basis to support an inference that they were knowingly made.'" Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n, 176 F.3d 315, 322 (6th Cir. 1999) (quoting Coffey v. Foamex L.P., 2 F.3d 157, 162 (6th Cir. 1993)). "A complaint is sufficient under Rule 9(b) if it alleges the time, place, and content of the alleged misrepresentation on which [the deceived party] relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud, and enables defendants to

prepare an informed pleading responsive to the specific allegations of fraud." United States ex rel. Poteet v. Medtronic, Inc., 52 F.3d 503, 518 (6th Cir. 2009) (internal quotation marks omitted).

Here, the court concludes that Plaintiff has sufficiently alleged a fraud claim against Ms. Harrison, Harrison's Funeral Home, and Mal Hooker to survive a motion to dismiss. According to the complaint, "at the direction of [Ms. Harrison], Mal Hooker did make an Interstate telephone call to 'FDLIC' offices, in the State of Texas. During this phone call, Defendant Mal Hooker did misrepresent his identity, by posing as Plaintiff, Michael Hooker, with intent of receiving personal information in concern with the related Preneed Contract(s)." (Compl. ¶ 22.) Plaintiff also alleges that Ms. Harrison and other co-defendants submitted to FDLIC "a fraudulent statement of funeral goods and services . . . along with an Irrevocable Assignment, stating that [Ms. Harrison] and Mal Hooker were the beneficiaries [of the preneed funeral contract]." (Compl. ¶ 26.) As a result of these alleged actions, Ms. Harrison and Harrison's Funeral Home purportedly gained the funds from these pre-need contracts. These allegations of fraud are sufficient to survive the present motion to dismiss.

**E. Remaining Defendants**

On March 12, 2013, the court entered an order directing Plaintiff to show cause why Plaintiff's claims against defendants Perie and Eldridge should not be dismissed without prejudice for failure to prosecute. (ECF No. 31 at 5.) Since that time, there is no evidence that Perie and Eldridge have been served, and Plaintiff has taken no other steps to prosecute his case against them. It is therefore recommended that all claims against Perie and Eldridge be dismissed.

### III. RECOMMENDATION

For the above reasons, it is recommended that the motion to dismiss be granted in part and denied in part, and that all claims against Ms. Harrison and Harrison's Funeral Home, with the exception of the fraud claim, be dismissed. It is also recommended that Mal Hooker's motion to dismiss the fraud claim be denied. It is further recommended that all claims against defendants Perie and Eldridge be dismissed.

Respectfully submitted,

s/ Tu M. Pham
TU M. PHAM
United States Magistrate Judge

January 23, 2015
Date

**NOTICE**

**WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THIS REPORT AND RECOMMENDED DISPOSITION, ANY PARTY MAY SERVE AND FILE SPECIFIC WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND**

**RECOMMENDATIONS. ANY PARTY MAY RESPOND TO ANOTHER PARTY'S OBJECTIONS WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b)(2); L.R. 72.1(g)(2). FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND FURTHER APPEAL.**