# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

_____

| | |
|---|---|
| **MICHAEL HOOKER,** | ) |
| Plaintiff, | ) |
| v. | ) No. 11-2252-JTF-tmp |
| **MAL HOOKER,** | ) |
| Defendant. | ) |

_____

## REPORT AND RECOMMENDATION
_____

Before the court are the following motions:

(1) Plaintiff Michael Hooker's ("Plaintiff") Motion to Reopen or Not Dismiss Claim, filed June 15, 2015 (ECF No. 130);

(2) Plaintiff's Motion for Trial by Judge, filed July 24, 2015 (ECF No. 151); and

(3) Defendant Mal Hooker's ("Defendant") Motion to Dismiss, filed July 27, 2015. (ECF No. 152).

In his motions, Plaintiff alleges that his brother, Defendant, knowingly and intentionally provided false information to Plaintiff and the undersigned Magistrate Judge during a settlement conference, which ultimately led to a settlement agreement between the parties.[1] Plaintiff requests

_____

[1]The settlement conference was conducted by the undersigned pursuant to an order of reference. (ECF No. 112.)

that the court set aside the settlement agreement and set the case for trial. Defendant, in his own motion and in his responses to Plaintiff's motions, urges the court to enforce the settlement agreement and dismiss Plaintiff's case pursuant to the terms of the settlement agreement. The court held hearings on these motions on June 29, July 15, and July 29, 2015. (ECF Nos. 137, 147, & 155.)

The court submits the following proposed findings of fact and conclusions of law, and recommends that the parties' settlement agreement be deemed void *ab initio* and that this case be set for trial.

## I. PROPOSED FINDINGS OF FACT

1. This action arises out of a dispute between Plaintiff and Defendant regarding their late mother's funeral. Generally, the dispute concerns whether the proper funeral home conducted the funeral services and lawfully received payment of the funeral expenses.

2. On April 1, 2011, Plaintiff filed a *pro se* complaint against Defendant, alleging numerous causes of action.[2] (ECF No. 1.) At this point in the litigation, the only cause of action

---

[2]Plaintiff's complaint also contained claims against numerous other defendants who have since been dismissed from the case.

that remains is Plaintiff's fraud claim against Defendant.  (ECF No. 81.)

3.   On March 9, 2015, United States District Judge John Fowlkes, Jr., the district judge assigned to this case, referred the case to the undersigned for judicial mediation.  (ECF No. 112.)

4.   On May 1, 2015, the undersigned held a settlement conference with the parties.  Present at the conference were Plaintiff, who is incarcerated and participated by telephone, his court-appointed mediation counsel, Howard Manis, and Defendant, who was not represented.[3]  The parties discussed at length a proposed settlement which would involve the transfer of Defendant's interest in their deceased mother's home, located at 3544 Naylor Drive, Memphis, Tennessee ("Naylor Drive property"), to Plaintiff.  However, no agreement was finalized between the parties at this conference.

5.   Although Defendant stated during the May 1 settlement conference to Plaintiff, his mediation counsel, and to the undersigned that he (Defendant) owed unpaid property taxes on the Naylor Drive property, at no point did Defendant mention a

---

[3]Other defendants, who have since been dismissed from the case and are not relevant to the motions currently before the court, were also present at the first settlement conference.

-3-

tax sale, impending or otherwise. (Affidavit of Howard Manis, ECF No. 156.)[4]

6. Mr. Manis subsequently drafted the written settlement agreement between the parties, which the court read into the record during a telephonic conference on May 21, 2015. At this conference, only Plaintiff, participating by telephone, and Defendant were present. In essence, without admitting liability, Defendant agreed to pay Plaintiff an amount not to exceed $12,872.76. Defendant agreed to pay this amount by executing a quitclaim deed transferring his interest in the Naylor Drive property to Plaintiff. The agreement provided that when Plaintiff was released from prison, he would repair the house, sell it, keep the agreed upon settlement amount for himself, and then deliver any excess proceeds from the sale to Defendant. The agreement also included the following provision: "In case of a breach of this agreement by either party, any and all claims arising out of this agreement shall be brought in a State Court of competent jurisdiction in Shelby County, Tennessee. The United States District Court in the Western

---

[4]According to the affidavit filed by Mr. Manis, he did not recall Defendant ever stating that the Naylor Drive property "was subject to any tax liens or impending tax sale." (Affidavit of Howard Manis, ECF No. 156, ¶ 5.) However, during the May 21, 2015 telephonic hearing Plaintiff indicated that Defendant disclosed during the settlement conference that Defendant owed taxes on the property.

-4-

District of Tennessee will no longer have jurisdiction over this matter or any claims arising out of this agreement." Although Plaintiff and Defendant both acknowledged that Defendant owed back taxes on the Naylor Drive property during the May 21 telephonic conference, at no point did Defendant indicate that the property was subject to a tax sale, impending or otherwise.

7. On June 4, 2015, Defendant executed a quitclaim deed transferring his interest in the Naylor Drive property to Plaintiff. (ECF No. 152-1.)

8. On June 5, 2015, Defendant met Plaintiff's wife at Mr. Manis's office to deliver the quitclaim deed and keys to the Naylor Drive property. At no point during that meeting did Defendant ever mention a tax sale. (ECF No. 156.)

9. On June 11, 2015, the Shelby County Chancery Court Clerk's Office sold the Naylor Drive property in a tax sale to recover delinquent city and county taxes in the amount of $8,499.46. The property sold for $9,900. After payment of the delinquent taxes and the clerk's commission on the sale, there was a balance of $800.54 in excess proceeds. (ECF No. 152-1.)

10. Following his discovery of the tax sale, Plaintiff filed two motions with the court requesting that the settlement agreement be set aside, because Defendant did not disclose the fact that the Naylor Drive property was scheduled to be sold in

a tax sale during settlement discussions. (ECF No. 130.) He requests that the case be set for trial. (ECF No. 151.)

## II. PROPOSED CONCLUSIONS OF LAW

It is well-established that district courts retain the inherent power to enforce settlement agreements regarding litigation pending before them. Anglo-Danish Fibre Industries, Ltd. v. Columbian Rope Co., No. 01-2133GV, 2002 WL 1784490, at *3 (W.D. Tenn. June 21, 2002) (citing Brock v. Scheuner Corp., 841 F.2d 151, 154 (6th Cir. 1988)). "A settlement agreement is a type of contract and is governed 'by reference to state substantive law governing contracts generally.'" Cogent Solutions Group, LLC v. Hyalogic, LLC, 712 F.3 305, 209 (6th Cir. 2013) (quoting Bamerilease Capital Corp. v. Nearburg, 958 F.2d 150, 152 (6th Cir. 1992)). In order for a contract to be enforceable under Tennessee law, "it must result from a meeting of the minds of the parties in mutual assent to the terms, must be based upon a sufficient consideration, free from fraud or undue influences, not against public policy and sufficiently definite." Anglo-Danish Fibre Industries, Ltd., 2002 WL 1784490, at *4 (quoting Johnson v. Cent. Nat'l Ins. Co., 356 S.W.2d 277, 281 (Tenn. 1962)). In this case, Plaintiff alleges that the settlement agreement between him and Defendant is unenforceable due to Defendant's fraudulent conduct during their

settlement negotiations.  Under Tennessee contract law, "[f]raud renders all contracts void, ab initio, at the option of the defrauded party, when diligently exercised, and in the absence of intervening rights of innocent third parties."  Brandon v. Wright, 838 S.W.2d 532, 534 (Tenn. Ct. App. 1992); see also River Links at Deer Creek, LLC v. Melz, 108 S.W.3d 855, 859 (Tenn. Ct. App. 2002) (stating that "when a contract has been procured through fraud, then unless the defrauded party elects to affirm it, there is absolutely no contract") (internal quotation marks and citation omitted).

The court finds that Defendant fraudulently misrepresented material information during the settlement conference with Plaintiff.  Although Defendant did disclose to Plaintiff and the undersigned that he owed back taxes on the Naylor Drive property, he failed to disclose that the property that would comprise the source of payment to Plaintiff was going to be sold at a tax sale.  This misrepresentation was clearly material, because if Plaintiff had known that the property was subject to a tax sale, he would not have agreed to the settlement.[5]

---

[5]At the June 29, 2015 hearing, Defendant stated: "I mentioned, and it is in the court documents, at the last hearing, [Plaintiff] said that the property was in a tax sale.  He stated that in the last hearing . . . Mr. Michael Hooker had knowledge that the house was in tax sale . . . He signed the agreement that's been filed knowing the property was in a tax sale."

Similarly, if Mr. Manis had known about the pending sale, he would not have advised his client to accept the settlement offer, and the undersigned would not have proceeded with assisting the parties in finalizing the settlement. The tax sale took place on June 11, 2015 – just five days after Defendant executed the quitclaim deed, six days after Defendant met with Plaintiff's wife at Mr. Manis's office to deliver the deed and keys to the property, and only three weeks after finalizing the settlement agreement on record before the court. Defendant was aware of the impending tax sale during the negotiation of the settlement and withheld that information from the Plaintiff. Thus, based on Defendant's fraudulent misrepresentations, the court finds that the settlement agreement entered into between Plaintiff and Defendant is void *ab initio* and has no legal effect. As such, all of the agreement's provisions, including the stipulation that any claims arising out of the agreement must be brought in state court, are void.

### III. RECOMMENDATION

For the reasons above, the court recommends that:

---

However, the court has reviewed the audio recording from the May 21, 2015 hearing and finds these allegations to be inaccurate. While it is clear that both parties were aware that taxes were owed on the Naylor Drive property, neither Plaintiff nor Defendant ever mentioned a tax sale during that hearing.

(1) Plaintiff's Motion to Reopen or Not Dismiss Claim be granted (ECF No. 130);

(2) Plaintiff's Motion for Trial by Judge be granted[6] (ECF No. 151); and

(3) Defendant's Motion to Dismiss be denied. (ECF No. 152).

Respectfully submitted,

s/ Tu M. Pham
TU M. PHAM
United States Magistrate Judge

December 7, 2015
Date

**NOTICE**

**WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THIS REPORT AND RECOMMENDED DISPOSITION, ANY PARTY MAY SERVE AND FILE SPECIFIC WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS. ANY PARTY MAY RESPOND TO ANOTHER PARTY'S OBJECTIONS WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY. 28 U.S.C. ' 636(b)(1); FED. R. CIV. P. 72(b)(2); L.R. 72.1(g)(2). FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND FURTHER APPEAL.**

---

[6]The court construes this motion as Plaintiff requesting that the case be set for a jury trial, and not as a motion for a bench trial.